```
                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| CARMEN MERCADO GONZÁLEZ,<br><br>**Plaintiff**<br><br>       v.<br><br>Baxter Sales & Distribution Corp., et al.<br><br>**Defendant(s)** | **CIVIL NO.** 08-2171 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D. J.

Pending before the court is a Motion for Summary Judgment submitted by Defendants Baxter Sales & Distribution Corp. ("Baxter Sales"), Baxter Healthcare Corporation, and Baxter Healthcare Corporation of Puerto Rico (collectively "Defendants"). (Docket No. 21). For the reasons discussed below, the Court **GRANTS** the Motion for Summary Judgment.

## FACTUAL BACKGROUND[1]

Baxter International Inc. is the parent company of several other companies that use the Baxter name, including Baxter Sales, located in Guaynabo, Puerto Rico. Baxter Sales engages in the

---

[1]The following facts are uncontested as per the following documents unless otherwise indicated: Dockets No. 1 Attach. 5 (the Complaint), No. 2 (the Answer), No. 21 Attach. 2 (Baxter Sales's Statement of Uncontested Material Facts), No. 38 (Mercado's Opposing Statement of Material Facts and Separate Statement of Additional Facts), and No. 47 Attach. 1 (Baxter Sales's Response Mercado's Separate Statement of Additional Facts).

Civil 08-2171 (JAG)                                                      2

marketing, sale, and distribution of pharmaceutical products from both "inter-company" suppliers and "third-party suppliers." "Inter-company" suppliers are Baxter corporations and affiliates, such as Baxter Export, Baxter Aibonito, Baxter Jayuya, etc., which produce goods that Baxter Sales then distributes. "Third party suppliers" are companies which are not under the Baxter name, but who use Baxter Sales to market and distribute their products. This included, among others, a company known as Cardinal Health ("Cardinal").

Baxter Sales (hereinafter "Baxter") hired Carmen Mercado González ("Mercado") on June 1, 1982 for the position of Billing Clerk. Over the years, her position changed to Accounting Clerk, and then to Accounting Specialist. As an Accounting Specialist, Mercado spent about 70% of her time on functions related to purchasing, both from "inter-company" and "third party suppliers."

Baxter and Cardinal began a commercial relationship on April 1, 2000, whereby Baxter was exclusively authorized to sell, promote, market, and distribute a wide array of products manufactured by Cardinal. In 2005, Baxter sold roughly $13.7 million in Cardinal products, representing 15% of Baxter's total sales.

This relationship ended January 29, 2006, as Cardinal was starting a new local subsidiary to sell Cardinal products to local customers. In order to carefully transition the existing business

Civil 08-2171 (JAG)                                                3

from Baxter to Cardinal, the two entered into a transition agreement which contemplated, among other things, Baxter's reassessing its own resources and personnel needs. Eight employees other than Mercado, some older than forty and others younger, were let go from Baxter in light of the loss of Cardinal's business, though some of them were re-employed by Cardinal.  Cardinal had been the largest third-party supplier, bringing in upwards of one million dollars in sales each month, equivalent to the volume brought in by the largest inter-company supplier, Baxter Export. (Docket No. 35 Attach. 3).

   Mercado's employment with Baxter was terminated in March 2006, and she worked for the company through the end of that month. Mercado, born on July 5, 1952, was 53 years old when she was fired. From January through March 2006, there were three employees with Mercado's title: Mercado; Minerva Claudio ("Claudio") (hired in 1969 and 58 years old at the time Mercado was fired); and Carmen Félix ("Félix") (hired in 1974, and slightly more than a month younger than Mercado at the time of the firing). As of March 2006, Mercado was the least senior of the Accounting Specialists, and was neither the oldest nor the youngest of the three.

   After speaking with Maria de Lourdes Ramón, the Comptroller, about the implications of losing Cardinal, Yandia Pérez, the Managing Director of Baxter Sales, made the decision to terminate Mercado, and informed Mercado that her position was eliminated.

Civil 08-2171 (JAG)                                                    4

There was no one at Baxter who had done work similar to Mercado when she left, and her responsibilities were then divided between the remaining two Accounting Specialists, Claudio and Félix. Baxter did not recruit anyone to fill her position specifically, although the vacant position of Credit Representative remained posted to "Bax Who," an internal website that announces job openings. The position was posted on March 27, 2006 (four days before Mercado ceased to work at Baxter), though the job listing offers no description of the job's actual responsibilities. (Docket No. 37 Attach. 10). The position remained unfilled until February 2007, when the company hired a temporary employee then serving under one position as a regular employee to serve as Credit Representative instead.

Mercado contends that, rather than being fired, she could have been offered positions then held by temporary employees, or the position of Credit Representative which was later filled by a temporary employee. However, there is no evidence of a seniority system at Baxter, nor is there a bumping policy. Despite having asked for an alternative position to avoid being fired, Mercado was not considered for any other position.

On July 12, 2006, Baxter recruited a temporary employee, Maite Román ("Román") to work in the Finance Department. Mercado alleges that Román was no more than thirty years old at the time she was hired. Aside from submitting a list of temporary employees

Civil 08-2171 (JAG)                                                    5

including Román, Mercado has provided no indication of the specific duties she was assigned, although Mercado alleges that she "provided support to Félix as needed." Félix was one of two persons who took over Mercado's job functions when Mercado left.

**PROCEDURAL BACKGROUND**

On August 29, 2008, Mercado filed a Complaint in the Puerto Rico Court of First Instance, San Juan, alleging age discrimination in violation of the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq., hereinafter "ADEA") and Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 et seq. ("Law 100"), as well as wrongful dismissal in violation of Puerto Rico Law No. 80 of May 30, 1976, as amended, 29 P.R. Laws Ann. tit. 29, § 185a et seq. ("Law 80"). (Docket No. 1 Attach. 5). Mercado also included an ERISA claim, which she has since waived. (Docket No. 37). Mercado additionally waived any claims under ADEA with regard to Baxter Healthcare Corporation and Baxter Healthcare Corporation of Puerto Rico, maintaining the ADEA claim against Baxter Sales and Distribution Corp. alone. Id. Baxter removed the present case to the Federal District Court for the District of Puerto Rico on October 10, 2008, (Docket No. 1), and filed the present Motion for Summary Judgment on October 26, 2009. (Docket No. 21).

**DISCUSSION**

I. <u>SUMMARY JUDGMENT STANDARD</u>

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. <u>Anderson</u>, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." <u>Iverson v. City of</u>

Civil 08-2171 (JAG)                                                    7

Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).  Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor."  United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).  Hence, "summary judgment is appropriate if the non-moving party's case rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"  Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).  It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge.  Anderson, 477 U.S. at 255.

II. AGE DISCRIMINATION UNDER ADEA

A. ADEA Standard

ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  ADEA protects individuals who are forty years old or older.  29 U.S.C. § 631(a).  The plaintiff in an ADEA

Civil 08-2171 (JAG)                                                    8

discrimination suit bears the burden of proving that her age "actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). See also Loeb v. Textron, 600 F.2d 1003, 1010-11 (1st Cir. 1979) ("Where defendant denies that age was a consideration, the plaintiff must prove that [s]he would not have been discharged 'but for' h[er] age, i.e., that age must have been a determinative factor.").

The First Circuit determined that, where a plaintiff cannot produce direct evidence of discrimination, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is applicable in the ADEA context, as it provides "a sensible, orderly way to evaluate the evidence in an age discrimination case." Loeb, 600 F.2d at 1015.  Under the McDonnell Douglas framework a plaintiff must establish a prima facie case of age discrimination by demonstrating that (1) she is within the protected class (over the age of forty), (2) her job performance was satisfactory to meet her employer's legitimate expectations, (3) her employer took adverse action against her, and (4) the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills that she had been rendering. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 53 (1st Cir. 2000).  In the

Civil 08-2171 (JAG)                                                        9

context of a reduction in force ("RIF"), the fourth prong requires instead that the plaintiff prove "that age was not treated neutrally in implementing the RIF, or younger individuals were retained in the same position." Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 247-48 (1st Cir. 1997) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995)).

Establishing a prima facie case creates a rebuttable presumption of discrimination. Gonzalez v. El Dia, Inc., 304 F.3d 63, 68-69 (1st Cir. 2002). While the burden of persuasion remains at all times with the plaintiff, the McDonnell Douglas analysis requires, once the prima facie case is established, that the defendant proffer "a legitimate, non-discriminatory reason for the adverse employment decision." Mesnick, 950 F.2d at 823. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves, 530 U.S. at 142 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). Thus, rather than convince the trier of fact of the veracity of their reason, defendants need only articulate a legitimate reason, whereupon the burden of persuasion returns to the plaintiff, to show that the reason is merely a pretext or "cover-up" for what is their true, discriminatory purpose. Loeb, 600 F.2d at 1011-12. To do this, the plaintiff "must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age

Civil 08-2171 (JAG)                                                    10

discrimination." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). On the other hand, if the plaintiff fails to establish a prima facie case, "the inference of discrimination never arises." Mesnick, 950 F.2d at 824.

B. Mercado's Claim Under ADEA

For the purposes of the present Motion, Baxter assumes that Mercado has met the first three elements of a prima facie case under ADEA. (Docket No. 21 Attach. 1). At issue, then, is the fourth element, which requires that Mercado prove "that age was not treated neutrally in implementing the RIF, or younger individuals were retained in the same position." Ruiz, 124 F.3d at 247-48.

Mercado asserted (and Baxter agreed) that no one else was performing similar job functions at the time Mercado's employment was terminated. Thus, there were no younger individuals retained in the same position while the older Mercado was let go. If anyone can be said to have retained the "same" position it would be Claudio and Félix, the only other employees who shared Mercado's actual title, as they were the employees delegated the remaining portions of Mercado's responsibilities after Mercado's position was eliminated. Claudio was five years older than Mercado, and Félix was, like Mercado, 53 at the time Mercado was fired. There is no contention that the decision to fire Mercado instead of Claudio or Félix was age-discriminatory, nor would such a contention be tenable.

What Mercado does argue is that a position advertised in Bax Who was an indication that Baxter was looking to replace Mercado with a younger employee. The position of Credit Representative, however, was not of the same nature as Mercado's position of Accounting Specialist. While Mercado maintains that the temporary employee who eventually filled the vacant position was performing duties that she herself was capable of, and duties which she had done at some point in her nearly 24 year-long career there, she does not put forth evidence to show that the position incorporated responsibilities that she was doing at the time she was fired. The Credit Representative did not take over her actual job responsibilities, which had already been disseminated to Claudio and Félix. Thus, the Bax Who listing is entirely irrelevant.

An issue which is relevant, however, is the hiring of a temporary employee, decades younger than Mercado, to work in the Finance Department less than four months after Mercado was let go. If this employee took on the responsibilities which Mercado had left behind, it may give rise to an inference of impermissible age discrimination. An employee's termination is not validly part of a reduction in force if that employee is thereafter replaced by a new hire or a current employee who has been completely reassigned. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993).

Mercado asserts that, contemporaneous with her firing and before her last day of employment, Baxter was seeking to recruit a

new hire in the Finance Department to take on responsibilities that Mercado was "qualified to perform." (Docket No. 38). This does not bespeak replacement. She further avers, however, that this person was to serve as a backup for Félix as needed. Id. If this is true, and if this person was backing up responsibilities that Félix had absorbed from Mercado, there is a tenuous (though not inconceivable) argument to be made that Román in fact took over where Mercado left off.

For these allegations to be considered on a Motion for Summary Judgment, they must qualify under Rule 56(e), which states that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). "[T]he affidavits must contain specific factual information based on the party's personal knowledge." Rivera-Santiago v. Abbott Pharm. PR Ltd., 609 F. Supp. 2d 167, 174 (D.P.R. 2009) (citng Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)).

Here, Mercado makes these allegations "to the best of [her] knowledge," and fails to set out any specific facts pertaining to the nature of Román's job. (Docket No. 37 Attach. 15). Mercado does append a list of temporary employees providing services to Baxter, which includes Román, but this list alone does nothing to substantiate an averment that Román in any way took over Mercado's

Civil 08-2171 (JAG)                                                        13

position.  (Docket No. 37 Attach. 11).  How Mercado, having been severed from Baxter for more than three months, could have known what Román's professional responsibilities entailed is never even cursorily explained.

Because there is nothing in the record that would legitimate a factfinder determining that Mercado has satisfied the fourth element of her prima facie case, the Court hereby **GRANTS** Baxter's Motion for Summary Judgment as to Mercado's ADEA claim.

III. CLAIMS AGAINST THE COMMONWEALTH

Since this Court dismissed all of Plaintiff's federal claims, the only remaining claims against the Defendant are the state law claims.  Plaintiff's amended complaint alleges supplemental state law claims brought pursuant to Law 80 and Law 100. The Court must address the issue of whether supplemental state law claims are allowed to proceed when all federal claims have been dismissed.

This Court should decline to exercise supplemental jurisdiction over a Plaintiff's state law claims when all federal claims are dismissed. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998)("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.")(citations omitted). Certainly, this case is no exception.

Civil 08-2171 (JAG)                                              14

Since Plaintiff's federal claims have been summarily dismissed, we will not exercise supplemental jurisdiction over Plaintiffs remaining state law claims against said defendant.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment against all of Mercado's claims. (Docket No. 21). Judgment shall be entered accordingly.

    IT IS SO ORDERED.
    In San Juan, Puerto Rico, this 31st day of August, 2010.

                                    s/ Jay A. Garcia-Gregory
                                    JAY A. GARCIA-GREGORY
                                    United States District Judge